UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**RANDY ALLEN UPHAM**,                          Case No. 3:15-cv-01644-KI

                    Plaintiff,

                                                OPINION AND ORDER

        v.

**NANCY A. BERRYHILL**, Acting
Commissioner of Social Security,[1]

                    Defendant.


        Sara L. Gabin, P.C., Attorney at Law
        14523 Westlake Drive
        Lake Oswego, OR 97035-7700

            Attorney for Plaintiff

        Billy J. Williams
        United States Attorney
        District of Oregon

---

        [1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit.

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

Thomas M. Elsberry
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

KING, Judge:

  Plaintiff Randy Allen Upham brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying Upham's application for supplemental security income benefits ("SSI").

I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

  Upham filed an application for SSI on May 17, 2011, alleging disability onset as of July

1, 2009.  The application was denied initially and upon reconsideration.  After a timely request

for a hearing, Upham, represented by counsel, appeared and testified before an Administrative

Law Judge ("ALJ") on July 16, 2013.

  On July 24, 2013, the ALJ issued a decision finding Upham was not disabled within the

meaning of the Act and therefore not entitled to benefits.  This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

July 2, 2015.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  *Parra*, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  *Id.* (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  *Id.*

## THE ALJ'S DECISION

The ALJ identified the following impairments as severe:  right rotator cuff tear, anti-social personality disorder and alcohol dependence/abuse in reported remission.  The ALJ found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ concluded Upham retained the residual functional capacity ("RFC") to perform modified light work.  Specifically, although he has no limitations in standing, walking or sitting, he is able to lift up to 20 pounds occasionally and ten pounds frequently with the left upper extremity.  Further, Upham can only use his right dominant arm as a guide for those weights.  He can lift up to ten pounds occasionally and less than ten pounds frequently with his right arm.  He cannot lift his upper right arm above horizontal level.  He can only occasionally handle, finger, and feel with his right upper extremity.  He can never climb ladders, ropes or scaffolding, and may never crawl.  He can never work in teams and he can only have incidental public contact.

Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ concluded Upham could not perform his past work but could perform other work in the national economy, such as paper sorter/recycler and price marker.  As a result, the ALJ concluded Upham was not disabled under the terms of the Act.

## FACTS

I incorporate the facts relevant to Upham's arguments in my analysis below.

## DISCUSSION

Upham challenges the ALJ's failure to include diabetic neuropathy and ADHD as severe impairments, believes the ALJ should have found his impairments equaled a listing, and argues the ALJ erred in his evaluation of medical opinions and in his evaluation of Upham's symptom testimony. Upham asserts that as a result of these errors the ALJ's RFC was flawed. Finally, Upham relies on medical records he submitted to the Appeals Council as further support for the severity of his neuropathy, inability to use his right arm, and the development of other impairments.

## I.    Severe Impairments

Upham asserts that his diabetic neuropathy and ADHD are severe impairments. A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). Additionally, in order to constitute a "severe" impairment, the impairment must have "more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) (restating policy that "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner").

Here, the ALJ did not identity ADHD as an impairment at all, and rejected diabetic

neuropathy as a severe impairment because it "caused only transient and mild symptoms and

limitations, or [is] otherwise not adequately supported by the medical evidence in the record."

Tr. 127.

    A.    <u>Diabetic Neuropathy</u>

The ALJ summarized and evaluated the evidence indicative of diabetic neuropathy at

length.  Specifically, the ALJ found:

> [I]n August 2012, on examination, he had no sensory deficits or problems with his
> feet.  His coordination was normal.  In fact, there is no mention in the record of
> these complaints until January 2013, and even at that time he was not using or in
> need of an assistive device, and he had a normal gait.  Then in March 2013, there
> is no mention of diabetes or any diabetic neuropathy complaints including any
> complaints of pain, numbness or tingling in his feet.  The first time the claimant
> actually treated for his alleged foot condition was not until April 2013.  He then
> reported his symptoms had only been bad for about two months.
>
> When the claimant did treat for his foot complaints, they were described as mild
> and he has not undergone any EMG studies to confirm his complaints.  He
> underwent a neurology consultation in June 2013, with Greg Zarelli, MD.  He had
> decreased sensation to pinprick, light touch and temperature from the right ankle
> distally and from the left mid foot distally, but there was no evidence of any
> weakness in his legs or feet and his gait was slightly wide-based, but otherwise
> normal.  Dr. Zarelli felt the claimant had "mild" peripheral neuropathy affecting
> his feet almost certainly due to his pre-diabetes.  He was told to work with his
> primary care physician to bring his blood sugars down to help reduce his risk of
> worsening neuropathy.  He also was provided a new medication regimen.  Dr.
> Zarelli also reported telling the claimant generally that people with peripheral
> neuropathy often have difficulty walking on uneven surfaces and reported he also
> suggests they use a walking stick for stability.  However, he did not specifically
> prescribe the claimant use of a cane.

Tr. 130 (internal citations to the record omitted).

Upham relies on the examination of Upham in January 2013 by Gene Paek, M.D., as well

as the April 2013 examination by Joel Simasko, M.D., and the June 2013 examination performed

by Greg Zarelli, M.D.  However, both Dr. Simasko and Dr. Zarelli discussed use of a cane in June 2013–and Dr. Zarelli merely recommended a cane–just one month before the ALJ's decision.  Upham himself testified that he only sometimes used the cane.  None of his physicians noted a problem with Upham's gait or strength, and Dr. Zarelli described the neuropathy as "mild."  Further, for the reasons I discuss below, the ALJ properly rejected Dr. Simasko's letter in which he opined Upham was unable to work, in part, due to neuropathy.  In sum, at the time he made his decision, substantial evidence supported the ALJ's determination that the medical evidence did not support diabetic neuropathy as a medically severe impairment.  *See* 20 C.F.R. §§ 41.920(a)(4)(ii), (c) (requiring severe medically determinable impairment to have lasted or be expected to last for a continuous period of at least 12 months).

B.    ADHD

The ALJ included anti-social personality disorder and alcohol dependence/abuse in reported remission.  He then noted "[t]he nature and severity of the claimant's mental impairments and resulting limitations are discussed in further detail at a later point in this decision.  The above listed impairments appear to cause more than minimal functional limitations and are considered severe impairments."  Tr. 127.

Upham points out that Daniel L. Scharf, Ph.D., diagnosed Upham with ADHD in his August 2011 report and that the ALJ gave "great weight" to Dr. Scharf's findings.  In support of his conclusion about the severity of Upham's mental impairments, the ALJ noted Dr. Scharf's conclusion that Upham's antisocial personality disorder was his main impairment.  Indeed, Dr. Scharf opined Upham had the ability to understand and remember instructions and sustain concentration and attention.  He felt only that Upham "may" have difficulties with persistence.

Tr. 474.  The equivocal nature of the statement is an insufficient basis to find error in the ALJ's

assessment of Upham's severe impairments.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d

685, 691 (9th Cir. 2009) (recommended conditions are neither a diagnosis nor a statement of

functional capacity).

II.      Listing Determination

         Upham contends the ALJ failed to explain his decision finding Upham did not meet or

equal a listing.  Upham believes his shoulder, personality disorder, and ADHD combine in some

fashion to equal a listing he does not identify.  Alternatively, he argues the ALJ should have

called a medical expert to testify on the issue of equivalency.

         The listings set out at 20 CFR pt. 404, Subpart. P, App. 1 are "descriptions of various

physical and mental illnesses and abnormalities, most of which are categorized by the body

system they affect."  *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).  For a claimant to show

that his impairment matches one of those listed, the impairment must meet all of the specified

medical criteria.  *Id.* at 530.  Alternatively, a claimant may show that his unlisted impairment is

"equivalent" to a listed impairment, but to do so she must present medical findings equal in

severity to all the criteria for the one most similar listed impairment.  *Id.* at 531.  Equivalence is

determined on the basis of a comparison between the "symptoms, signs and laboratory findings"

about the claimant's impairment, as evidenced by the medical records, "with the medical criteria

shown with the listed impairment."  20 C.F.R. § 404.1526.  "Medical equivalence must be based

on medical findings."  *Id.*  "A generalized assertion of functional problems is not enough to

establish disability at step three."  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If a

claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to

work and is awarded benefits without a determination whether she can actually perform prior work or other work. *Sullivan*, 493 U.S. at 532.

Upham bears the burden of proving he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). Upham has failed to meet his burden. The ALJ did not err.

III.    Medical Opinions

According to Upham, the ALJ erred in his evaluation of the opinions of Kim Webster, M.D., Dr. Paek, Dr. Simasko, and Dr. Scharf. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

Page 10 - OPINION AND ORDER

A.    Dr. Webster and Dr. Paek

Dr. Webster and Dr. Paek examined Upham on one occasion each, at the agency's request.  The ALJ gave great weight to Dr. Webster's opinion but only some weight to Dr. Paek's opinion.

Upham's main dispute with the ALJ is his interpretation of Dr. Webster's opinion; Upham contends the doctor did not segregate the right arm from the left arm when restricting the weight Upham could lift.  As a result, Upham reads the opinion to mean he cannot lift or carry more than ten pounds *with either his left or his right arm*, in contrast to the ALJ's RFC which found Upham could lift up to 20 pounds occasionally and ten pounds frequently with his left arm, could use his right arm to guide the left, could lift up to ten pounds occasionally and less than ten pounds frequently with his right arm, and could push and pull with his right arm with those same weight limits.  Additionally, Upham is unhappy with the ALJ's decision to give "some weight" to Dr. Paek's opinion, when the ALJ appeared to adopt Dr. Paek's functional limitations and not the functional limitations identified by Dr. Webster.

Contrary to Upham's assertion, the ALJ properly interpreted and implemented Dr. Webster's opinion respecting right extremity lifting limitations.  The focus of the doctor's "Comprehensive Musculoskeletal Evaluation" was Upham's "right shoulder pain."  Tr. 464.  Upon examination, the doctor identified "full range of motion in the left" shoulder joint, but limitations in abduction, adduction, extension and flexion in the right shoulder.  Tr. 467.  Additionally, he described decreased strength in the right shoulder and decreased grip strength in the right versus the left.  Dr. Webster diagnosed "right *elbow* pain"–the ALJ believed this to be a typographical error–explaining it was the "most dramatic examination of shoulder structural

impairment an degeneration that I have ever seen with many positive tests suggesting a wide variety of internal disruption of the joint capsules and ligaments and tendons around the joint itself." Tr. 469. Finally, Dr. Webster opined, "Because of the multitude of significant findings in the right shoulder, I would limit lifting and carrying to less than 10 pounds occasionally, less than 10 pounds frequently." Further, Dr. Webster limited postural limitations–he could not climb, he could not crawl, he could pull only with the left hand or arm. The doctor also felt Upham should have "appropriate manipulative restrictions." Tr. 469. Thus, it is apparent from the limitation itself, as well as the context of the entire examination, that Dr. Webster's lifting limitations were directed at Upham's right extremity. As a result, the ALJ's conclusion that Dr. Webster's opinions as to Upham's lifting limitations were relevant only to the right arm was a rational interpretation of the opinion.

The ALJ also properly relied on Dr. Paek's examination findings of Upham several years later, in January 2013, to conclude Upham could lift 20 pounds occasionally and 10 pounds frequently with his left extremity. Dr. Paek diagnosed a frozen shoulder, noting Upham had "no use of that right arm above the elbow. He is still able to grip things; however, he has some diminished sensation in the fingers bilaterally as well as some weakness." Tr. 600. Dr. Paek felt Upham could lift up to 20 pounds occasionally and ten pounds frequently. To the extent Upham disputes the ALJ's decision to give only "some weight" to Dr. Paek's opinion, the ALJ was clear that he accepted Dr. Paek's functional limitations (although he imposed a lighter lifting restriction for Upham's right arm), but did not accept his diagnoses of diabetic neuropathy and emphysema as being based on Upham's statements. Notably, Dr. Paek only "suspected" diabetic

neuropathy, and even despite such a suspicion, did not limit his standing, walking or sitting

capacity, nor find he needed a cane.  The ALJ's reasoning is supported by the record.

In sum, the ALJ's decision to synthesize the two opinions in setting lifting limitations is

supported by the language of both opinions.  Thus, there is no support for Upham's conclusion

that, at least with respect to the lifting limitations, the ALJ improperly relied on his own

"notions" rather than the medical opinions.

I do note, however, the lack of support in the record for the ALJ's conclusion that Upham

can push and pull with his right arm up to ten pounds occasionally and less than ten pounds

frequently.  To the contrary, as the ALJ himself recognized, Dr. Webster (whose opinion

received "great weight") concluded Upham could not pull with his right arm.  Tr. 132.  Similarly,

the State agency consultants (whose opinions also received "weight") felt Upham could never

push or pull with his right upper extremities.  Tr. 198, 213. There is no support in the record to

find Upham capable of pushing or pulling with his right extremity.

B.    Dr. Simasko

Upham also disagrees with the ALJ's treatment of Dr. Simasko's opinion.  Dr. Simasko

wrote a short note in April 2013 that Upham is "currently unable to work due to his shoulder

injury and unable to use the right arm for any type of heavy work and nerve problem with his feet

that significantly limits his walking."  Tr. 881.  The ALJ gave little weight to this opinion

because the doctor saw Upham on one occasion, just three months before the hearing, and

because he relied on Upham's reports which the ALJ found not reliable.

Since Dr. Simasko's opinion is contradicted by Dr. Webster, Dr. Paek, and the state

agency consultants, the ALJ was required to give specific and legitimate reasons to reject his

opinion.  While the limited treating relationship is irrelevant in this context–where all of the

physicians on whom the ALJ relied saw Upham once or not at all–a physician's opinion of

disability may be rejected if it is "based to a large extent on a claimant's self-reports that have

been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008).  Here, multiple physicians found Upham capable of working despite his right shoulder

injury and findings of neuropathy, based on their examinations of Upham's physical abilities and

not based on his reports alone.  An ALJ is not required to accept the opinion of a physician, even

a treating physician, if the opinion is " conclusory, brief, and unsupported by the record as a

whole[.]"  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ

did not err.

 C. <u>Dr. Scharf</u>

 Upham finally asserts the ALJ erred in, again, giving "great weight" to an opinion

without including all of the functional limitations outlined in the opinion.  The ALJ gave Dr.

Scharf's opinion "great weight" but neglected to include any limitation reflecting Dr. Scharf's

opinion that Upham may have difficulties with persistence.  As I indicated above, the equivocal

nature of the statement is an insufficient basis to find error in the ALJ's assessment of Upham's

RFC.  *Valentine*, 574 F.3d at 691 (recommended conditions are neither a diagnosis nor a

statement of functional capacity).

IV. <u>Upham's Credibility</u>

 Upham testified that he had not worked since he injured his shoulder in 2009.  He also

testified that he had been in jail since he last worked, and that he was currently on probation.  He

had been sober since December 22, 2011.  He could not use his right arm, his feet hurt, and he

thought he could lift a gallon of milk (about 8 pounds) with his left arm, depending on how his feet felt that day.  He did not know if he could lift more as he had not tried.  He never used his right arm to support the bottom of a load he was carrying with his left arm.  He spent his days watching television and getting some fresh air outside.  He could do laundry.  He testified he no longer did the housework he reported he could do in 2011 because of his right arm and feet.  He clarified an earlier report about getting all A's in mechanical engineering at Mt. Hood Community College meant that really he was getting A's in easy classes.  While he initially testified his food stamps were his only income, he later testified he received money in the form of loans and grants exceeding the cost of tuition.

The ALJ rejected his testimony on several grounds.  As an initial matter, the ALJ pointed out Upham's lengthy criminal record raised the question whether "his continuing unemployment is actually due to medical impairments[.]"  Tr. 129.  Indeed, Upham had been unable to obtain surgery on his shoulder because he had been in and out of jail.  The ALJ also noted Upham's inconsistent statements regarding the reason for his job ending, his inability to drive, his purported inability to use his right arm at all, and the length of time he suffered from neuropathy. Upham also reported no past substance abuse difficulties to the Dr. Scharf.  The ALJ found Upham's testimony to be evasive and inconsistent; for example, he never explained how much weight he could lift with his left arm, made questionable statements about his inability to do housework, failed to explain his good grades at community college, and gave incomplete information about his sources of income.  Finally, the ALJ thought Upham's daily activities were inconsistent with his reports of totally disabling symptoms and limitations.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[2]

---

[2] Upham argues the ALJ considered his criminal history and inconsistent testimony on subjects other than his impairments in contravention of Social Security Ruling 16-3p. That ruling, however, became effective as of March 28, 2016. *See* SSR 16-3p, *available at* 2016 WL 1119029, 2016 WL 1237954, at *1 (updating effective date). Upham offers no authority for the proposition that the Commissioner may make rulings retroactive. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 213-15 (1988) (discussing Medicare and noting "[r]etroactivity is not favored in the law"). Some courts consider SSR 16-3p, however, to be a clarification of a policy, rather than a new policy. *See Mesecher v. Colvin*, 6:14-cv-01578-JE, 2016 WL 6666800, at *4 (D. Or. Nov. 10, 2016). I do not decide the issue because even avoiding evidence no longer permissible under SSR 16-3p, the ALJ gave a number of clear and convincing reasons supported by substantial evidence to question Upham's testimony. Further, even if the ALJ gave reasons now impermissible under SSR 16-3p that does not mean the ALJ's entire credibility assessment is improper. *Batson*, 359 F.3d at 1197.

The ALJ noted that Upham gave inconsistent reports about why he left his job, saying at one point it ended because of his shoulder injury, and at another point that his job ended because it was temporary.  Tr. 337, 472, 497; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (proper consideration is that the claimant left his job for reasons other than his alleged impairment).  Additionally, Upham reported he did not drive because of his shoulder problems, when in reality he did not have a license because of his criminal record.  Tr. 348, 485.  Similarly, Upham told Dr. Scharf he could not move his right arm at all, but then he reached into his pocket with his right arm to take out his phone.  Tr. 471.  He showed no pain with this movement.  These are all good reasons to question the veracity of Upham's testimony about the extent of his shoulder injury.  *See Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements concerning symptoms is a valid credibility factor).

With regard to Upham's testimony about his neuropathy, the ALJ was wrong in his report that Upham testified he had experienced neuropathy for over one year.  While Upham initially testified that the pins and needles in his feet "probably progressed from . . . for about the last year," he clarified that it was not the same as a year before and that he "probably didn't really pay a whole lot of attention to it a year ago."  Tr. 155-56.  Accordingly, contrary to the ALJ's conclusion, a contemporaneous examination from a year ago is actually *consistent* with Upham's testimony.  Specifically, in August 2012, Upham exhibited normal strength and no sensory deficit.  Tr. 778.  Nevertheless, Upham's testimony about the extent of his limitations–that he cannot walk at all, or only a few blocks–is inconsistent with the objective medical record and his only very recent complaints about the pain in his feet.  Specifically, even though Upham complained about neuropathy in January 2013, he had a normal gait at that time.  He did not

mention the problem in March 2013, but in April 2013 (the first time he sought treatment for the problem) he said his symptoms had been "especially bad" for two months. Tr. 889. In June 2013, although his gait was "slightly wide-based" it was "otherwise normal" and Dr. Zarelli referred to the diagnosis as "mild peripheral neuropathy affecting the feet." Tr. 905, 906. Dr. Zarelli then gave general advice applicable to "persons with a peripheral neuropathy" including walking in the dark, on uneven surfaces, when closing their eyes in the shower, and walking up and down stairs. Upham fell a few weeks later, about a month before the hearing, and Dr. Simasko recommended he use a cane. Tr. 908. Upham testified a month later to only sometimes using a cane. Tr. 148. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Tommasetti*, 533 F.3d at 1039 (9th Cir. 2008) (unexplained failure to seek treatment is a credibility factor).

Finally, while I am not overly convinced that Upham's daily activities are so substantial as to equate to an ability to work, *Orn*, 495 F.3d at 639, his attendance at NA and AA meetings, community support groups, community college classes, and use of public transportation do tend to show Upham is capable of being around people despite his antisocial personality disorder. Thus, the ALJ's reliance on these activities was a clear and convincing reason to question Upham's function report about his inability to be around people.

In sum, the ALJ gave clear and convincing reasons supported by substantial evidence in the record to question Upham's testimony about the intensity, persistence and limiting effects of his impairments.

Page 18 - OPINION AND ORDER

V.    RFC

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001). The vocational expert's opinion about a claimant's residual functional capacity has no value if the assumptions in the hypothetical are not supported by medical evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). "The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record." *Id.* at 756-57 (citations and quotations omitted).

Although Upham complains the ALJ's RFC is internally inconsistent with respect to the lifting limitations, I find the ALJ was sufficiently specific as to glean his meaning. Upham may lift more weight with his left arm (up to 20 pounds occasionally and ten pounds frequently), may use his right arm only as a guide to help the left with that amount of weight, and may lift with his right arm up to ten pounds occasionally and less than ten pounds frequently.

Nevertheless, the ALJ did not explain how he gave "great weight" to Dr. Webster's opinion when Dr. Webster specifically concluded, "Pulling he could not do because of problems in the right shoulder, unless you are just talking about pulling with the left hand or arm." Tr. 469. The ALJ allowed pulling with the right arm up to ten pounds occasionally and less than ten pounds frequently. Dr. Paek, whose opinion the ALJ gave "some weight," did not opine as to pulling limitations at all, but did indicate Upham could hold things with only his left hand. Further, the state agency consultants, whose opinions the ALJ gave "weight," also concluded Upham could not push or pull with his right upper extremity. Tr. 198, 213.

VI.    <u>Evidence Provided to the Appeals Council</u>

Upham repeatedly refers to medical records he provided to the Appeals Council subsequent to the issuance of the ALJ's decision.  The Commissioner contends my consideration of these records is limited to the materiality and good cause requirements contained in 42 U.S.C. § 405(g).  The Commissioner notes that although the Appeals Council received the additional evidence, it did not consider the evidence and did not make the medical evidence a part of the record.  *See* Tr. 2 ("This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before July 24, 2013.").

A claimant may submit "any new and material evidence . . . that relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1476(b)(1).  Further, "[i]f you submit evidence that does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will explain why it did not accept the additional evidence and will advise you of your right to file a new application."  *Id.*  Evidence the Appeals Council declines to consider does not become part of the administrative record.  *See Bates v. Comm'r of Soc. Sec.*, 3:14-cv-01553-HZ, 2015 WL 5686884, at *3 (D. Or. Sept. 25, 2015); *Barrington v. Colvin*, No. 1:13-cv-01512-JO, 2014 WL 5342371, at *8 (D. Or. Oct. 20, 2014); *Asbury v. Colvin*, 3:14-cv-01425-BR, 2015 WL 6531325, at *4 (D. Or. Oct. 28, 2015).  Here, the Appeals Council explicitly declined to make the new medical evidence part of the record.  Tr. 2.  Instead, it placed the evidence in Upham's electronic file to use in a new claim.  Accordingly, I agree with the Commissioner that my review of the new material is limited to the materiality and good cause criteria of 42 U.S.C. § 405(g).

This court may remand a proceeding "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To be material, the new evidence offered must bear directly and substantially on the matter in dispute. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). The records consist of Upham's prison treatment records largely from 2014 and 2015, after the relevant period which ended July 24, 2013. The earliest treatment record discussing his neuropathy is from December 2013, six months after the ALJ's decision, in which Upham reports "neuropathy in his feet that hurts and burns and gives him trouble walking *if he doesn't get his gabapentin*." Tr. 11. This new evidence post-dated the ALJ's decision and is not based on treatment that occurred during the relevant disability period. As a result, I do not find the materiality element met.

VII.    Remand

The court has the discretion to remand the case for additional evidence and findings or to award benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court has discretion to credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Alternatively, the court can remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Remand for further hearing is necessary here where the ALJ included a limitation in the RFC that is not supported by the evidence.  The VE did not testify about whether the jobs he identified would remain as options knowing Upham could not push or pull with his right extremity.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

Dated this 2nd day of February, 2017.


   /s/ Garr M. King
Garr M. King
United States District Judge